We'll hear an argument this morning in Case 22-899, Smith v. Arizona. Mr. Sunfelman? Mr. Chief Justice, and may it please the Court, Jason Smith was denied his Sixth Amendment confrontation right when the state used a substitute expert, Gregory Lungoni, to convey the out-of-court testimonial statements of the witness who actually analyzed the evidence in his case, Elizabeth Rast. Lungoni had no personal knowledge of the testing that Rast performed. In terms of what Rast did, Lungoni had no personal knowledge of what Rast did in terms of her testing. But what he did do was he conveyed Rast's statements from her own documents, from her report and notes, where he conveyed specifically the tests that she performed, the specific items that she tested, the procedures that she used. And when he purported to give his own opinions, Lungoni was actually reciting verbatim the same statements that Rast made in her report to set forth her conclusions. Rast's statements were testimonial because any reasonable, objective person would understand that she prepared those statements for the primary purpose of creating evidence to use against Smith in his prosecution. The state's request in this case at PATAP 127A specifically identified Smith, the charges against him, the trial had been set in his case. And as the record shows at PATAP 99A, the state's attorney actually coordinated with Rast on her testing. And it is no wonder that in this case that the United States agrees that the judgment below cannot stand. The Court of Appeals, nonetheless, found that Lungoni's testimony was permissible. And it did so applying the legal fiction that an expert may state the basis for his underlying conclusions and opinions under Rule 703 without offering that basis for the truth. That legal fiction, as the plurality in this court recognized in Williams, is unrealistic. It's unrealistic to expect that a jury such as Smith would understand that fiction. And in this case, for the jury to have understood what Lungoni's opinions were and to have evaluated those opinions, it necessarily had to have considered the truth of those underlying statements that were offered to support them. The state here made a strategic choice to make Rast a witness against Smith. And in doing so, it elicited Rast's statements through Lungoni. And when it did so, it was required to present Rast for cross-examination. Its failure to do so violated Smith's confrontation right. I welcome the Court's questions. Would you take a step back and explain why you first think that this is testimonial? And two, how is it different from the report in Williams? Sure. Rast's statements here are testimonial because any reasonable, objective person would understand that they were prepared for the primary and indeed sole exclusive purpose of creating evidence for Smith's prosecution. Again, that's set out from the state's initial request identifying Rast, the charges against him, the trial had been set. She coordinated with the state's attorney. And it was all generated through a formalized process in which she prepared notes and a report all on typewritten DPS letterhead bearing the seal of the DPS. And it bears emphasis that these are documents that were served as part of discovery in this case, you know, to prove the facts that the prosecution was going to put on. So all of those circumstances meet the primary evidentiary purpose test. They meet the targeted individual test. And they also meet any requirement of solemnity that's required of Rast. Yes, Thor. I was just going to ask, why isn't it enough for the defense counsel to be able to ask Longoni about what happened in the lab? And he's going to have to say, you know, I don't know. Well, then you're just relying on, you know, what somebody told you, right? Well, on what basis do you have for that? You say you're relying on this particular type of test. How do you know that was done? Do you know how long that was kept in whatever? In other words, it seems to me that there is a two-edged sword. I mean, you put somebody up there, like Longoni, whose knowledge is very limited. He seems he's ripe for cross-examination. It could be pretty effective. Right. Mr. Chief Justice, to answer your question, this is not a scenario where the state put on Longoni to testify about data that he reviewed in the abstract. And that would have been fine. There are a lot of things that the state could have done here that could have been fine. They could have had Longoni retest the evidence. They could have asked for a continuance so that they could secure RAS's presence. But at the end of the day, what they could have done was simply had Longoni take the stand and testify that I reviewed certain data in the abstract, and that is consistent with certain illicit substances. What the state couldn't do through Longoni was to say, recount RAS's statements that she performed certain tests on specific evidence in Smith's case. Those came from her testimonial documents, and that's what implicates the confrontation issue here. So we're not suggesting that an expert witness cannot rely on others. It's the moment when they introduce the testimonial statement of someone else where the confrontation right is implicated. That's an interesting point, and I think it's correct. And if it is correct, then I don't understand why in your brief and in your introductory statement this morning you've gone out of your way to trash Rule 703. I mean, what are you trying to do? Well, under Rule 703, I think Rule 703, Justice Alito, operates in conjunction or in parallel with the Sixth Amendment. Rule 703, the rule of evidence, it can prohibit certain evidence, and if you pass the hurdle in Rule 703, when you deal with testimonial statements, you have to pass the higher burden of the Sixth Amendment. Yeah, of course. But 703 does not provide that the facts on which an expert relies in reaching his or her expert opinion are put before the trier of fact for the truth of the matter asserted. Isn't that correct? We disagree with that. Logic tells us, commentators, jurists, legal treatises all tell us that when you put forth an expert's underlying statements that are offered on which the expert bases an opinion, and those statements can only support the expert's opinion insofar as they're true, then you're necessarily offering those statements. Oh, okay. Well, I understood you in your introductory statement to retreat from that, so that's what I want to pursue. You can win this case if you establish that RASTS notes were testimonial and therefore introduced for the truth of the matter asserted. You don't have to take out Rule 703 in order to do that. Now, suppose Longoni had testified in the old style by answering a hypothetical question, which is what I understood you to talk about before. Would there be a confrontation clause problem there? If it was simply he was asked to assume certain facts before providing his opinion, we don't think there would be a confrontation clause. Okay. All right. Step two. This is a trial. Now, this was a jury trial, and a lot of the stuff that was done is kind of mind-boggling. There was no request for an instruction to the jury that they should not accept RASTS statements, the information in RASTS reports or notes for the truth of the matter asserted, right? There was no request for that. That's correct, Justice Alito, but our position is that there was no need for it, because in this case, when you get to an instruction— I understand, but really, I don't understand why a competent defense counsel wouldn't at least do that. There was not a request for a judgment of acquittal on the ground that there was no competent evidence to show that the substances that your client possessed were controlled substances. There was a judgment, a motion for a judgment of acquittal. Yeah, on other grounds. All right, let me get to the step two, beyond the hypothetical. So let's say it's a bench trial before a very experienced trial judge, and the trial judge says, look, I've been a judge for 25 years, and I don't need to do this business with a hypothetical. I know that you, Mr. Expert, Ms. Expert, you've looked at an actual report, so tell me what's in the report. And the conclusion, excuse me, that you drew from the report, and I will not consider the underlying facts for the truth of the matter asserted. Swear in the Bible. I'm not going to consider them for that purpose. I've been a judge a long time. I can do that. Confrontation clause problem there? Well, first off, it's important to remember this was a jury trial. I understand, but what's the answer to the hypothetical? Our answer is that regardless of whether this case or any case is tried to a judge or a jury, there will still be a confrontation violation here because at the end of the day, the underlying statement is offered for the truth to prove the basis of the expert's opinion. And I think to kind of explain that, if we look at the delta between a scenario where the expert offers an opinion based on hypothetical facts and what occurred here, which is where Lungoni specifically stated Rast did certain things, reached certain results, used certain procedures, the delta between that is the truth of the statements. I understand that, but get back to my bench trial. You don't believe the trial judge. The trial judge says, I'm not going to consider this for the truth of the matter asserted. If you, Ms. Prosecutor, Mr. Prosecutor, want to prove that this was meth or marijuana, you're going to have to produce other evidence. Confrontation clause problem there? Yeah, the problem, we do think so. And the problem I have with that hypothetical, Justice Alito, is that even when it's a judge that's the trier of fact, when you begin with the premise that you're offering a statement for the truth, it makes no sense to say I'm not considering it for the truth. If you're offering it for the truth, what if you're not offering it for the truth and the judge says, I'm not going to consider it for the truth? Right, and our position is, as we've laid out in the briefing, if an expert's underlying statements are presented and those statements only support the expert's opinion insofar as they're true, then they are offered for the truth in all respects. Counsel, the common law is very different from Rule 703. 703 is a modern rule, isn't it? Yes, it is. In the common law, an expert couldn't even often do a hypothetical. In the common law, they have to be evidence presented at trial from which the expert then offered an opinion, correct? That is correct. And so we've now very strayed very far. I take your point in your brief that the confrontation clause, under anybody's theory on the bench that's been articulated previously, if the lab technician had written an affidavit, I swear under the penalties of perjury, that I did X, Y, and Z tests, that these were the results, these are my notes, I attached them here too, and the expert got up and read that affidavit without saying, I hereby say, that that would be a clear confrontation clause violation. Yes, that's the court's holdings in Melendez-Diaz and Volkow. All right. So the fiction of 703, that somehow you read somebody else's notes, procedures, conclusions, I think this is your argument, isn't it? Yes, it is. It's just that, correct? That's correct, Justice Sotomayor. So they gave the game away, according to you, when they said this was testimony, correct? That's correct. Because once you just give someone else's testimony, and it is the only basis for your opinion, then it's really you being a conduit. It's the policeman getting up at the star chamber and reading your notes and saying, this guy is guilty because of that. Put this guy away because he did all these things. That's what a policeman did in the star chamber, right? That's correct, Justice Sotomayor. And to carry your hypothetical forward, we can imagine a scenario where a police officer goes to a crime scene and records notes of his or her observations at the crime scene,  Now, under this court's precedent, it would be a violation of the confrontation right if the report were introduced without confrontation. It would be a confrontation violation if the notes are introduced without confrontation. Why would that be? Let's imagine that he takes the notes, but he never actually produces the affidavit. I think it depends how close. I mean, if you stretch out primary purpose tests too far, then it covers every antecedent. I mean, if he's just taking notes, like window was open, footprint was outside. I mean, that's not created as a substitute for trial testimony in any way. Well, a couple of answers, Justice Behr. In that hypothetical of the police officer, we would also submit that if a second police officer took the stand and recited statements from the notes, that, too, would be improper. But to answer your honor— It has to be the notes, right? The notes, then, would be the statement that mattered, the testimonial statement. That is correct. And there shouldn't be a distinction drawn in this case between the notes and the report. Not this case. You said, I'm taking your hypothetical, and you said it wouldn't be any different if a police officer went to the scene and jotted some notes down that there would be no functional difference between the notes and the affidavit. That doesn't seem right to me, so I'm wondering why. The reason is that the police officer is recording those notes, depending on the circumstances, for a primary evidentiary purpose. That these statements could later be used at trial. Everything in an investigation is done for the purpose of establishing a case against the defendant. So you're saying everything, everything you jot down? Well, not everything. It has to be a primary purpose, right? So if the police officer, as the court has addressed in past cases like Davis, Hammond, Bryan, Clark— He jots it down for himself. He's never intending to produce it to anyone. He jots it down for himself because when he goes back and thinks about the case and thinks about who's going to target, he wants to have his notes there about what the scene looked like. And if we can imagine how that would translate here to the scenario of forensic examination. No, no, no, no, no. Stick with the hypothetical. Right. From our perspective, that would be testimonial because the police officer is going there with an objective primary purpose of recording observations at a crime scene, knowing that that would be— It must depend on the facts, right? I mean, it must depend on the facts as to whether the notes are sufficiently closely tied to the report to fall within the same umbrella or not. I mean, there are some notes that wouldn't and some notes that would. I agree, Justice Kagan. But he just said the notes in that hypothetical would. Yeah, Justice Barrett, so I'm assuming in that hypothetical that the notes were prepared in conjunction, knowing that an affidavit would be prepared. That wasn't the hypothetical I gave you, though. I said it was just for himself and he wanted to take it back as he thought about who to target in this investigation, and you said that would be testimonial. Yeah. From our perspective, there's a link there between the notes and the report. On the question of what is testimonial, I guess one question I have, which goes back a ways, which is what tests to apply. And so I just have a question. Why shouldn't we adopt the test that Justice Thomas has been advocating in his opinions since White? And under Justice Thomas's test, under that test about formality and solemnity, why don't you lose here? Well, first off, as we understand Justice Thomas's opinions in White, in Williams, and Clark, the circumstances matter. It doesn't have to be that the statements are necessarily in a formalized affidavit or deposition testimony. The circumstances matter. Why shouldn't we adopt that test was the first question. Because I think it strikes too narrowly. It would preclude the Sixth Amendment from applying to a vast swath of the types of problems that inspired the Confrontation Clause to begin with. It would provide a means for prosecutors to come up with ways to introduce statements simply by making things less formal. And they don't necessarily have to do it in a way that is deceptive. They can enact policies where everything is done. It seems like it would be more predictable, more easily applied, and therefore helpful in that respect. Do you agree with that? It certainly would draw brighter lines. I agree with that. But at the end of the day, it strikes too narrowly for the protections that are intended by the Sixth Amendment Confrontation Clause. And under that test, suppose that test, why do you win here? Right. In this case, the notes, the report, however you want to consider them, they were created as part of a formalized process, a formalized dialogue, if you may. The prosecuting attorney, the state's attorney, coordinated with RAST on her testing. She prepared her statements as part of a formalized process at a crime lab that resulted in her typewriting nine pages of notes, three pages of report, all on DPS letterhead. These things were served. These weren't handwritten notes on scrap pieces of paper. They were served as part of discovery in this case to prove facts. All of those circumstances together reflect a level of formality and solemnity that we feel meets whatever tests members of this Court have articulated. In this report, this is very close to bull coming, isn't it? Our view is that — And not to Williams. Williams, the report wasn't signed, wasn't admitted into evidence, nothing else, correct? That's correct. Here, like in bull coming, which Justice Thomas signed on to, it was signed, even though it wasn't an affidavit in its traditional sense. The report was signed. That's correct. And the notes here were attached to that report. Pardon me? And the notes here were attached to that. Yes. The notes essentially were an appendix to the report that RAST prepared. There might be an argument that we don't really know when they were appended, but that's how they were introduced. Thank you, counsel. Justice Thomas, anything further? Justice Alito? Well, just to follow up on your answer to something that Justice Sotomayor asked, I thought that when we finished our little questioning that you were saying that Rule 703 created a problem under the Confrontation Clause. But do you want to go further than that and say that experts not only can't answer hypothetical questions, but also that they can't take into account any facts that are not proved at trial in their presence? I don't think we would go that far. So I think under Rule 703, a hypothetical question is fine so long as you're not saying, reciting RAST statements that I did X, got X, Y results. I think that's fine. Where, again, the problem arises is when someone like Longoni takes the stand and provides those. Okay, so you're not making the argument that that's what the common – that was the state of the common law in 1791, and therefore that's what the Confrontation Clause incorporates. You're not making that argument. We're not making that argument, but also we ought to be mindful that the notion that you can introduce a statement through an expert under Rule 703 also wasn't around at the time. Okay, thank you. Justice Sotomayor? There's a circuit split on two separate questions. The first is what test exists for an out-of-court statement to be testimonial. That's Justice Thomas's position, and the one that Justice Kavanaugh asked you about, does it have to be sworn and signed, sworn how and signed, et cetera, et cetera. Here I understand Arizona conceded that. I know in its brief it raises that question, but the question presented, everything centers around that concession. It was testimonial, right? Well, the state of Arizona – the state did not challenge whether any of these statements were testimonial in the proceedings below. That's correct. So the question before us is whether under the facts of this case the statements were offered for the truth. That's correct. That's a separate question, and that's the second part of the split among the circuits. That is correct, Justice Sotomayor, and to the extent that there is a consensus on the court, we do think the court should decide the full issue here and condemn this practice of using a substitute expert to convey testimonial statements. But the court may, for prudential reasons, decide to write an opinion that's narrower. Just on the second split, which is whether this is testimonial the way it was done. That's correct. All right. Justice Kagan? Justice Gorsuch? Kavanaugh? Justice Barrett? Justice Jackson? Good morning. Can I just – I want to give you an opportunity to speak to the administrative burden point. As I read some of the arguments on the other side, there's a concern about criminal defendants challenging every piece of forensic evidence and bringing the criminal justice system to a halt under your rule. Are they right about that? And if not, why not? So we respond with that there are three significant practical limitations on the confrontation right that would prevent the sorts of outreach that the state and the United States complain of. The first is that you have to deal with statements. Most of what experts deal with are physical evidence, photographs, things found at a crime scene. And we're not suggesting that an expert can't rely on that simply because someone else collected that physical evidence. The second is that even if a statement is involved, it has to be testimonial. So as this Court has recognized in Melendez-Diaz, Bullcumming, statements that are made in a hospital context, for example, for treatment purposes aren't testimonial. Similarly, most statements in the course of a business that isn't directed to generating evidence isn't going to be testimonial. And experts can rely on all of that. And then third, I think very critically, the state, the prosecution, does not have to put on every statement to prove its case. And to kind of provide an example here with this case, again, what the state could have done was simply have Lungoni testify in a hypothetical, abstract fashion that he reviewed certain data, and that's consistent with the findings of that this is an illicit drug. But they went further than that. They had Lungoni actually recount, recite statements saying Raf did X, she used Y procedures, and she reached Z results. And that, in our sense, underscores the truth of the matter asserted. That is the reason that they are presenting it, because without... And in your position as well, that that really raises the confrontation clause problem, because to what extent could a defendant actually challenge those statements, that she did X or Y, because the person who's testifying doesn't know. He's just looking at the report that says that. That's correct, Justice Jackson. Thank you. Thank you, counsel. Mr. Fagan. Thank you, Mr. Chief Justice, and may it please the Court. We agree with Petitioner that Lungoni's testimony here may have gone too far. Our principal interest is in making clear that careful application of the federal rules can avoid confrontation concerns. Two main points on that. Number one is that there's no confrontation problem when an expert comes up and testifies to the expert's bare fact of the bottom-line conclusion that the expert's drawn, like these are drugs. The problem comes in when evidence surrounding that so-called basis evidence or methodology evidence comes in. The second point is that methodology evidence can sometimes come in subject to careful limiting instructions in some appropriate cases. It's a little bit hard for me to tell, admittedly, but I think Petitioner largely agrees with us on the first point and to some degree on the second point. So I think the Court can resolve this case narrowly without suggesting that we need Justice Breyer's parade of 13 witnesses every time we want to introduce a DNA match. Do you think that Ms. Rass notes a testimonial? So I'd like to, Justice Thomas, I think it's very important there to break this into pieces. There are actually three different pieces of Rass's materials in the appendix, and we think you could potentially go different directions with each of them, and they kind of match how we do it in the federal system as well. So there is an attested report on, or close to, you know, signed report on stationary that's three pages long. That may well be testimonial. There are some further lab notes about, they aren't quite notes, but they're a little more data about what the material, how the material was tested and so forth. Those may or may not be testimonial. I'd need to know more about exactly how they were prepared and for what purpose. They may not be testimonial if all that was intended to go into court is that one report I mentioned earlier, which is like the first three or four pages of the PET app. And then third, you have kind of just Rass's notes, and by and large we think those probably aren't testimonial. In particular, they contain materials the petitioner appears to agree don't implicate the confrontation clause, like the graphs from the gas chromatographer mass spectrometry machine. So why do you- There are a lot of mays and probablys in your presentation this morning, and they were in your brief as well. You said, began by saying you agree with petitioner that, you know, that may have gone too far. Petitioner's position is actually a little more than that. They think it did go too far. What is the basis of your reservation? Well, Your Honor, I think there is some dispute between the parties as to how the jury would have understood this, the degree to which Rass may have been testifying-I'm sorry, Longoni- may have been testifying sort of verbatim from Rass's notes or how well the jury might have understood that to be the case, and we're not really taking a position on any of that. All that said, you know, if the court wanted to narrowly reverse this case, we think this is a much easier case than a case that we think would follow scrupulously under the federal rules, and we think under the federal rules you could have done something like this in a case like this. There would be basically three steps to it. Longoni testifies to his independent conclusion that these materials are drugs, saying that he reviewed the GCMS data that even Petitioner agrees is not testimonial. Second, there would need to be some chain of custody evidence that could come in, as it did in this case, from Longoni himself based on his personal familiarity with the procedures at the lab that would at least supply circumstantial evidence that connected up the bottom-line conclusion he's drawing with the case, and then at that point, as you pointed out, Mr. Chief Justice, the defense could just savage him for not having an appropriate basis here. But we think those two things would at least get you over the line to sufficiency, which is in any event a state law or federal law evidence issue, and it wouldn't present any confrontation concerns, because even if you gave the jury a not-for-the-truth-of-the-matter instruction in a case like that, I think the jury would be very confused. What am I not considering? But if I can understand, Mr. Fagan, your position and why it is that you're not supporting the state, as you do in most cases, I'm just going to read you a portion of the testimony, and you tell me whether this is appropriate or not and, you know, whether, oh, that's fine, or, no, that's the reason why we're not supporting the state, as we usually do. So this is after Mr. Longoni gets up, and they establish that he's reviewed the RASP report and also the RASP notes. So the prosecutor says, did you notice whether the policies and practices that you've just described were followed? Because he's also described the lab's policies and practices. And he says, yes. Prosecutor, were they followed? Yes. From your review of the lab notes in this case, can you tell me what scientific method was used to analyze Item 26? Answer, yes. The microscopic examination and the chemical color test were used. Question, that was done in this case. Answer, yes, it was. Question, was there a blank done to prevent contamination? Answer, according to the notes, yes. Now, is that the kind of thing that you think there's no other ‑‑ there's nothing else going on there than the truth of the matter asserted? So for that, Justice Kagan, I'm going to go with option B. That is why we are not supporting the state as we usually would. But I'd emphasize that if there were more ‑‑ Explain that a little bit further. I mean, get to the second part of your answer. I don't mean to cut you off. But that is why you're down on the other side. Because what? Well, as I was explaining in response to the Chief Justice, we do think that you could introduce circumstantial evidence about what procedures and tests might have ‑‑ were likely run in a particular case by just saying every time we get something that we think might be ‑‑ Yeah, I understand. But I was asking ‑‑ We went much further here. And we don't think that's the way this should come in. And that's not how we would try to introduce it in federal court. Or if we did, we'd have someone who could testify from personal knowledge to that. There you might have a problem. And that's not even the kind of thing we necessarily think you could get in not for the truth of the matter asserted. The kinds of things you might be able to get in not for the truth of the matter asserted, to take a couple of simpler conceptual examples, are, number one, you could imagine some ballistics evidence where one expert does it by taking some measurements and calculating based on math, and another expert sets up some sort of experimental setup. The jury might not be able to understand either the math or the experimental physics, but they might have some intuition as to which methodology they thought was more reliable. Another example might be a case where both the ‑‑ I'm sorry to interrupt you. I'm sorry. No, no. You have every right, Justice Gorsuch. Whether I have a right or not, I'm still sorry. But before you go on, I just wanted to make sure I understood your answer to Justice Kagan. And I think the distinction you're drawing, and I just think this, is on the one hand, if the expert had gotten up and said, industry standards or forensic standards require these tests, and assuming they were done, then yes, I believe this was a controlled substance, permissible. I hear that more or less as what you're saying you want to reserve and make sure is possible, versus saying Ms. Rast ran these tests, Ms. Rast found that they meet the criteria, and therefore I believe they are controlled substances. Is that a fair distinction? Is it a fair understanding of the distinction you're drawing with Justice Kagan? Yes. I think that is basically fair, if I could just qualify it slightly in two ways. I think the problem with the second one is simply testifying that Rast did something. Did these things, yes. And as for the first one, I just add on something I think the expert could testify, or someone else could provide this testimony, that not only do forensic standards require this, but our lab is accredited, our accreditation requires it, this is what we invariably do. Based on his personal knowledge. Based on his personal knowledge of what the lab does. So it's either personal knowledge, an industry standard, or a hypothetical would be all okay. The line is saying I am sitting here telling you what Ms. Rast did, for the truth of that. That's correct, Your Honor. But we do think that the former evidence would be sufficient under the federal rules because it's evidence. I just want to make sure I understood the distinction. I'm sorry for interrupting. Can I take you? Thank you. Thank you, counsel. Justice Thomas? Just a follow-up at the end of the questioning of petitioner's counsel. I understand that only about 3% of criminal drug cases ever go to trial. I think that's true. Generous, actually. I think that's true of most federal trials. So most people, most cases go by plea and you don't need an expert at all, correct? I don't think that's quite correct, Your Honor, because, of course, we don't know when they're going to plead. And we've had cases where we get all the witnesses lined up that we need. Absolutely. And they plead at the last minute. And they have every right. We're still talking. The statistic is at least 85% are pleas, correct? California has the rule that petitioner wants. Are you aware of some massive problem in California? With the prosecution being able to prove its case? I don't think they have a rule that either precludes an independent expert, an independent reviewer from testifying, or a rule that requires a parade of witnesses. And you don't have to take my word for it. You can look at the Alameda PD brief, which just describes the California rule as really going to the kind of basis evidence that I've been talking about today that may or may not be problematic. Then I phrased the question wrong. California follows the rule as you understand it, and we don't have a parade of witnesses, correct? I think California may follow a somewhat stricter rule than the one we'd urge in the federal courts, but they don't go all the way to a point where I don't even think petitioners are urging the court to go, but they really don't go all the way to a rule that says this kind of thing is out. My bottom line is the parade of horribles is not happening. The parade of horribles is not happening, but if this court were to suggest to us, or to suggest to the lower courts, either that you can't have even a quote-unquote substitute expert who, to be clear, is doing the exact same thing a second reviewer at the time would be doing, or if the court were to suggest that we really do need a parade of witnesses in these cases, I think it would get substantially worse. Not necessarily because the cases would go to trial, but because defendants, and I don't begrudge them this, would have every right to put us to our proof, see if we can actually come up with the 13 witnesses we need at once, and only then deciding to plead. I really want to qualify everything you've answered. Thank you. Justice Kagan? I'm sorry, Chief. I did interrupt you. You wanted to go say something else entirely. Here's your shot, if you can still remember. Thank you, Justice Gorsuch. I believe, if I recall correctly, I'm tempted to go any number of directions with this. No, no, that is not the invitation I gave you. Understanding what you're asking me, I believe I was in the middle of giving a second example of methodology evidence that a jury might be able to easily separate out from any for truth purpose. And the second one would be where, for example, both sides might be relying on the same piece of evidence, and one side thinks it proves one thing, and the other side thinks it proves another thing. They're both applying the same, you know, they're both looking at the same x-ray. One radiologist thinks the carcinoma was caused by this. The other thinks it was caused by this. And I would emphasize that under the federal rules, you are entitled under Rule 105 to a limiting instruction that it not be used for the truth, and we presume that juries follow those instructions. Thank you, Justice Gorsuch. I appreciate it. Justice Gabbard? Can I take you back to your answers to Justice Thomas at the beginning about whether it's testimonial? What test were you applying? There I was applying what I think the court has announced as its test, which is the primary purpose of creating an out-of-court substitute for trial testimony.  Do you have a position on whether the test that Justice Thomas articulated in Williams versus primary purpose is more consistent with the Constitution or better? We don't have one that we're ‑‑ we don't have a position that we're presenting today because that hasn't really been the focus of the case. I think one thing on remand would be whether the testimoniality of the statements is still open to question. But as between the two of them, if the court wanted to open that up again or to adopt Justice Thomas' test, we wouldn't oppose it doing that. We just haven't, as we admittedly might sometimes do, exceeded our focus amicus by suggesting the court take this case as an opportunity to do so. Thank you. Justice Barrett? Mr. Fagan, you said at one point, I can't remember in response to who, perhaps Justice Thomas, that Rath's notes came in a couple of different categories and you stepped through them. Maybe it was Justice Thomas and you stepped through them and you said some might be testimonial, etc. You would need to know more, I think you said, about the circumstances under which they were prepared. Could you say a little bit more about that? Is that just the application? I guess I just want to make sure. Let's say that I think they're all being introduced for their truth. Are you saying that you would need more information to figure out whether they were created with the primary purpose of creating a substitute for trial testimony? That's right, Justice Barrett. Maybe I can go a little bit further and explain that. The sort of bare report of these are drugs, this was the weight, I'm signing this, this is on our stationary, to the extent that was created with an understanding that it would go into court as opposed to, I don't know, some national security purpose or something like that. I mean, that's probably going to be testimonial. Then you have these two other pieces of it. One is just kind of a further explication of what the expert did, and then the other is what we might call raw data. We think the raw data is very unlikely to be testimonial, and the middle kind of, you know, here's a little more detail, could or could not be. And the things you might want to know are, number one, was this just being written down because of lab procedures or to document it for someone else or for some later internal review as opposed to for the purpose of it ever coming into court? And another one just might be, what do the accreditation requirements require? Because for a lot of forensic science, there are accreditation requirements that require that notes be gathered and made so that they can do, for example, reviews of whether you're following your accreditation. So it sounds like your answer would be different. You know, Petitioner said in response to the hypothetical he raised about a police officer taking notes at the scene of the crime that because those would be made with the primary purpose of creating evidence or establishing a fact material to the case, that those would be testimonial. It sounds like under your definition and your approach to RASP notes, you would disagree with that. Well, I would agree with Justice Kagan that it would depend on the facts and circumstances under which the notes were taken. Right, but the facts and circumstances being he's jotting notes down that he's not doing because he anticipates incorporating them into a later affidavit. He's just jotting them down so that when he goes back and he looks, he can say, you know, here is the lay of the land who I think the suspect might be. I understand Petitioner to say that's testimonial. Yeah, I think something that is created for an investigatory purpose as opposed to with a focus on court may well not be testimonial. And so in your response to me about RASP notes, it's kind of like the further away the notes get from the report she was creating, that's evidence or a factor to take into account in determining whether they were created for the primary purpose of being a substitute for testimony. I think that's a very important factor, Your Honor, because particularly, I mean, there's admittedly a little bit of a chicken and egg thing going on here with the court's ruling versus how I'm answering this question. Right. Because I think, you know, law experts are fairly likely to be aware of how the court is construing these things. But to the extent that you have what you have in basically every case, no scientists as an island, some collaborative lab work, and I'm just preparing some work for you to look at and then you're kind of running the show, I don't know that what I'm preparing for you are just careful documentation in accord with accreditation or internal review procedures. I don't think that's going to be testimonial. Okay. Thank you, Mr. Fagan. Justice Jackson? I found Justice Gorsuch's question very, very helpful, and I'm just trying to bear down again on the government's position about methodological evidence as you've articulated it. So I think I hear you saying that when an expert testifies in general about, as Justice Gorsuch said, you know, industry standard. This is the way this kind of testing is ordinarily done. This is, from my own personal knowledge, how the methodology is typically taken care of in these situations, that that could be okay and no confrontation clause problem. But that the problem arises, I guess in this case, when the expert's testimony actually relies on the statements in this lab report about what was done to this evidence and sort of vouches for that, right? When the expert says, not this is the way things are normally tested, and I'm telling you that from my expert view, but in this particular case, the evidence that was collected was tested in a certain way. I'm assuming that that's actually true, and now my testimony is X on the basis of that assumption. Is it the government's view that that is not being offered for truth, or it is in the latter scenario? Well, let me just make one thing clear on your first scenario. The general evidence that the witness could testify about through personal knowledge, essentially they're a fact witness on this, it doesn't even need to be the same expert, could be very specific to this lab as well. Yes, yes, but it's not specific to the testing of this evidence necessarily. That's the distinction I'm trying to make. Okay, and then as to the second, I guess I would, there were a couple of different pieces in there. One would be, if you really just had testimony like, this was done in this case, I know it, that would be, we're not arguing that that would be permissible. If, depending on exactly how... And that's because why? Well, you're testing something outside the personal knowledge. You really are just repeating the, in effect, repeating the substance of out-of-court statements. You're offering it for its truth, right, because you're assuming that it actually was done in that way. So where the statement is to the jury, you know, expert B, who is not me and you're not hearing from, did these tests, that's problematic. I think there might be, I would reserve, Justice Jackson, just depending on how it comes in this trial and how it actually winds up being shaped and what kind of limitations there are on it, something like the notes purported to say that these tests were run in this case, I have no reason to believe otherwise and I have proceeded on that assumption. Why is that? And your objection or the reason why you think that's okay is because why? Well, there the expert is making clear that the expert is not making this direct testimony about what, in fact, happened in the case. I think it may well, in those circumstances, be a lot closer to the circumstantial evidence. But isn't he still offering it for truth to the extent that he's assuming that it did happen in that way? I think in that circumstance, all the expert's offering for the truth is that the expert's assuming it. I think to get back to the Chief Justice's point that these people can be savaged on cross-examination, you'd say you're just assuming that because that's what usually happens and that's what purported to happen in this case, but you don't know for a fact that that happened, do you? How would a defendant ever, without the lab technician, actually challenge the assumption? Are you saying the Confrontation Clause doesn't speak to the defendant's ability to challenge the assumption in a meaningful way? First of all, Your Honor, I just want to be quite clear that we don't think that testimony has to come in in the way I was just describing to you for the expert to testify. I think the expert can testify very simply at a somewhat higher level of abstraction in line with what I was explaining to Chief Justice. Right, but if he doesn't, my question is? But if he does, then I think where the defense gets its opportunity to cross-examine, and again, nobody is actually saying in this circumstance that the expert did these things. Sorry, that the testing analyst actually did these things. The testifying expert is simply saying, this is how we usually do it. I've reviewed a case file that says it was done in this case. I have no reason to disbelieve that, but it makes clear I can't personally tell you that's exactly what happened in this case. Okay, thank you. Thank you, counsel. Mr. Samuels? Thank you, Mr. Chief Justice, and may it please the Court. This Court has long been clear, and Petitioner, I don't think, disputes, that evidence that is not offered for the truth of the matter asserted, is not offered to prove the truth of the matter asserted, does not implicate the Confrontation Clause. Meanwhile, Arizona law has long been clear that evidence offered only for the purpose of explaining the basis of an expert's opinion is not and cannot be offered for the truth of the matter asserted. In a case like this, everyone agrees that a testifying expert like Longoni cannot serve as a mere conduit for the conclusions of a testing expert like Rast. That's just not what happened here, though. Longoni explicitly testified that he could form independent conclusions, and then testified that he had formed independent conclusions and revealed what those conclusions were. He based those conclusions on information in Rast's notes, and a computer generated graphs from her testing. The trial judge who heard that testimony thus correctly found that Longoni had testified to his own opinion and correctly held that there was no Confrontation Clause violation. The judgment below could also be affirmed on the independent ground that Rast's notes were non-testimonial. That is not something that the state has ever affirmatively conceded in this case. The notes, which were the source of the statements here, were neither prepared to be a substitute for trial testimony, nor were they sufficiently formal or solemn to qualify as testimonial. The notes differ in many key ways from the report, and Petitioner, perhaps recognizing this, repeatedly tries to make the report the focus of this Court's inquiry, but there is just nothing in the record to support the assertion that any statements from the report were referenced at trial here. The closest they get to coming to that is they say that he recited the conclusions from the report. There's no indication in the record that's what he did. He said the same words. But it's just a standard conclusion. It's the standard language that a lab analyst would use, that a substance has a usable quantity of fill-in-the-blank. In this way and in other ways, Petitioner encourages the Court to look well beyond the unique facts of this case, and he sets his sights instead on a far-reaching new rule without any real workable limiting principle. We don't think the Confrontation Clause requires the anomalous results that would result from Petitioner's rule, and we think this Court should decline Petitioner's invitation to greatly expand the reach of the Confrontation Clause, which is what we think they invite. I welcome the Court's questions. You put quite a bit of weight on the argument that Ms. Rass's statements or notes were not introduced for the truth of those notes. But if they were inaccurate or just flat-out wrong, what would be the value of Mr. Longoni's testimony? We don't dispute, Your Honor, that the value of Longoni's testimony is very much directly related to Rass's notes and whether they are reliable or not, but we think that's exactly what 703 gets at, which is that the jury can use that information, the underlying what we've called basis evidence here, to evaluate Longoni's opinion, but not for other purposes. Well, you don't think that in the context of this trial, of a criminal trial, that that has some friction with the Confrontation Clause if the truth is necessary in order for the opinion to be useful? No, Your Honor. I think it's helpful to take a step back and think about what this case would have looked like if a limiting instruction had been given, because a limiting instruction is something that the defendant would have been entitled to if he had asked for one. And if one had been given, I think this Court would presume that a limiting instruction would be followed. It presumes that in nearly all cases, with one exception, I think, of Bruton. And we think, you know, counsel for criminal defendants have stood at this lectern and have argued many times in other contexts that certain instructions are very difficult for a jury to follow, and nonetheless, the presumption applies. And we think it would similarly apply in this case. That then begs the question, well, why does that matter here, because there was no limiting instruction here? But I think the answer to that question is simply that the petitioner never requested the limiting instruction, and for that reason, I think there's not a confrontation clause violation here. Counsel, can I go back to one point, and that was your argument that this is non-testimonial. The government says that's not unclear. To be frank with you, I don't see it argued anywhere below and anywhere at trial, actually. You didn't, I don't see it anywhere in your cert stage briefs in the courts below. I see it in your red brief, and you argue it here, but you sort of have a footnote on that argument, and that's all. I don't know of any time that we've ever addressed a question that wasn't raised in the cert brief in opposition here, wasn't raised both courts below, was raised in a footnote at best in the red brief. Isn't the entire premise of the question before us that the information was testimonial? I don't think so, Your Honor. I'd like to say a couple things about that. Let me start with the red brief and maybe rewind. No, why don't you work with the court below? Where did you argue that in the court below? I'm happy to proceed in the other fashion. So in the Court of Appeals, there was a citation of Justice Thomas' concurrence in Williams, which was only helpful for the state on the testimonial question. Have we ever had a case where mere citation preserves such a consequential argument as overturning precedent? Where did you point out that all components of this report were not testimonial or testimonial? Candidly, Your Honor, we didn't further develop the argument in the Arizona Court of Appeals. Okay. So now come here. Or in the trial court. Am I right? No. I mean, I don't think that there was any reason to discuss it in the trial court, given that the trial court's ruling was what it was on the other question. Yeah. I mean, but in both the Arizona courts and then also in the filing that you filed in the Arizona Supreme Court, although they never took the case. But in all these filings, everything was about the truth of the matter asserted. Well, in the trial court, that was the focus. In the Court of Appeals, like I said, it was, except for this citation. Yeah. I mean, it was a citation in like a 30-page brief, which clearly focuses on, you know, the first question that you started your, when you got up to the podium, you started with. It was all about that. It was all about the hearsay question. I take the point. That was certainly the primary focus in the state courts. I would like to explain why, which is it had been settled for, I think, a little more than a decade at this point in the Arizona courts that that first preliminary question, the not for the truth question, settled this case. I mean, this was a case decided in an unpublished opinion without oral argument in the Arizona Court of Appeals on that question. And so the state didn't develop a testimonial argument right there. But I think there was, frankly, there was never going to be any relevance to that argument unless the very unlikely event that this court granted certiorari. Now, I would like to talk about what perhaps looks less unlikely now. But I would like. In hindsight. Yes. Our briefs here, because I think I would disagree with some of the premises of your question, Justice Sotomayor. In the red brief, I think we spend nine or ten pages talking about whether these statements were testimonial or not. Eleven pages. Eleven pages. Thank you, Justice Kavanaugh. No, I agree with you. It's been totally briefed here. The question is whether it's been forfeited below. Understood. And last thing I'll say, because this is maybe the last brief I haven't mentioned yet, is in our brief in opposition at the third stage. I think even petitioner understood us to be arguing that Justice Thomas's view supported our case here. Again, that's only helpful on the testimonial question. In their reply at the third stage, they say they assert that we didn't dispute that this was testimonial under the test supplied by the plurality or the dissent in Williams. Notably absent from that is Justice Thomas's view, which we laid out and talked about how it, again, not developed with very specific facts. I don't dispute that, but did talk about how that supported the case. Can I talk about the substance of the testimonial question for a minute? I want to start with the report question, which I think Mr. Fagan said on any test that we've ever used in this court is pretty clearly testimonial. And I think you sort of acknowledged that by suggesting that the real thing is, oh, he'd only relied on the notes. But is that really true? I mean, I'm just looking, I'm just going to read you some places where the witness really couldn't seem to answer questions without, you know, reviewing the report. So there's a question, did your review help show how States Exhibit 26 was tested in this case? And Longoni says, may I review the report, Your Honor? Court says you may. Another question, do you know who was responsible for intake? Longoni says, if I may refer again to the report, Your Honor. The court says you may. Another question, did you also look at what was done to Item 28? Longoni says, again, can I refer to the report, Your Honor? The court says you may. I mean, this report is all over the transcript. The word report, Justice Kagan, is all over the transcript. We made this point in the brief, but I want to emphasize, a close look at the record reveals he couldn't possibly have been looking at the report for those statements. So I think you're looking at Pet App 40. That first question, did you review how States Exhibit 26 was tested in this case? And he's, you know, referencing to the report at that point. That information is not in the report. So I take that point, but it just sort of shows how, in this case, he's up there on the stand. And he has both the official report and some of the notes in an essentially an appendix. And he's kind of going back and forth between them. And, you know, that just shows how closely related the two were. That's what he prepared from. You know, he reviewed the report, and he reviewed those underlying notes, which basically, you know, went through. Because the report, as you say, is just the conclusions. But it's the notes that tell you exactly what Ms. Rast did in the case. And he is repeating the notes, essentially, to say this is how it was tested. This is what Rast did. We don't dispute that he's relaying some information from the notes, certainly. But as it relates to the notes versus report question, you know, we're not saying here that he never would have looked at the report or that he was totally ignorant of it. But there's no indication in the record that he ever relayed anything from it. The only thing in the report was the conclusions. And he does state the exact same conclusions in the exact same words after using the notes to say, you know, to go through, essentially, in the same words again, everything that Rast said about what she did. He uses the same words. I made the point in my opening, and I think it's an important one, that this is just standard language for this. You know, usable quantity of X is the legal thing that you have to prove in a case like this. And I think the folks at the lab know that. I think it's also the case that if you think about what it is that he is actually testifying to, if you look at his actual testimony, he's asked specifically if he can form an independent opinion. I don't think he would have said yes to that question if he couldn't form it from, for example, the graphs, which he specifically says he looked at. Well, we don't have to just accept his word for it, right? I mean, we do have to kind of figure out the extent to which his opinion is independent. And I guess that takes me back to Justice Thomas's initial question about your argument with respect to this being offered for the truth of the matter asserted. And I created a hypothetical that I'm hoping you can respond to that would help me to understand what you mean about it not being offered for truth. So suppose we have a murder that the police believe was committed with some kind of unconventional weapon that they find in the defendant's possession. So I'm envisioning something like a unique 3D printed gun or something. And at trial, the state puts on a ballistics expert who has not examined the weapon himself, but he bases his opinion on a report of a lab technician who has tested this weapon. And the lab report says how the weapon works. It explains how the technician figured that out. It says that the technician took the weapon in both of his hands. He stood three feet away from the target. He lifted it at a certain angle, pointed it. The projectile came out at a certain angle and velocity. And here is the photograph even of the final result, et cetera, of how it entered. Here are the measurements of the scatter plot. On the stand, the expert says, I reviewed the report and the photos and the measurements and also the pathologist's report of the wound on the victim. And in my expert opinion, this is the weapon that killed the victim. I take it that your argument is that the underlying lab reports are not being offered for truth in that situation. But I guess I don't understand why. The lab report is what is explaining to the expert how this weapon actually worked since he never tested it. And he's unquestionably assuming the truth of the testing as the technician laid it out. So why is it that it's not being offered for truth in this way? Well, in talking about that hypothetical, I think it's important to emphasize these cases can be very fact specific in evaluating a question like that. It's easy to think about two poles, but I think there really is a spectrum. And there's a spectrum in part because, as we've said, mere conduit testimony is not permitted. And so I think there's an evaluation that's required in any case and in a case like that one to figure out, is the expert who's testifying really adding something? And is his testimony really the central thing that matters? Yes, he's adding something in my hypothetical because the technician is not saying anything about whether this is the actual gun that killed the victim. The technician is just saying this is how this machine that you found in the defendant's possession works. But that's the basis, right? The expert is saying I have to assume that it works in this way because I never tested it myself. And on the assumption that it works in the way that the technician says it does, my testimony is that this is the murder weapon. So it's possible that testimony like that obviously might not come in because of Daubert or other reasons. But setting that aside, if the expert was not familiar at all with the type of weapon involved, I'm not quite sure how they could offer a completely independent opinion. But again, assume that they have enough expertise in this particular type of 3D printing or something like that to do that. I do think it's possible that the different basis evidence that you're talking about there could be referenced. But let me ask you, isn't this exactly the confrontation clause problem that the Constitution worries about? Because the expert gets up and he relies on this report that explains how this machine works. But he has not actually tested it. So the defendant could say, I agree with you, Mr. Expert, that if the machine worked in this way, it is the murder weapon. What I'd like to do is interrogate whether or not the testing of this machine was accurate. And what you haven't done, State, is presented to me the person who actually tested it. I want to say, says the defendant, that the photographs that are here are not really the photographs. This is not what happened. Or that you didn't really stand only three feet. You stood a lot closer in order to make this result. But I can't do that because the expert is not, the person who tested it is not before me. I feel like that's the real problem that the confrontation clause is about, and that you'd say I couldn't do without a confrontation clause issue. I just think expert testimony is different in several ways, and I think that is well established for quite some time. And it's different in a few ways I think that really matter here. One is, under 703, there's going to be an instruction if the defendant requests it, and the jury, we would presume, would follow it. And I think that that's really important in this context. And so I'm just not sure that it is what the confrontation clause is designed to get at, because the jury would be told not to consider it as substantive evidence. I also think in the context of expert testimony, this is maybe a less important point, but it's still worth noting, that there are other ways to confront expert testimony that are available that are not available in other contexts. Folks from this court and others have noted that the defendant could subpoena the analyst, but set that aside for a moment. It's also the case that defendants can hire defense experts. They'll have disclosures about this testing before trial. They can attack this in other ways. And so I'm not sure that that necessarily is critical to the confrontation clause analysis, but I do think it's worth noting that it makes expert testimony, it's yet another way that expert testimony is different from the percipient witness testimony that we think lies really at the heart of the confrontation clause. I'm sorry, please. An expert's opinion is always worthless unless the facts on which the expert relied in reaching the opinion are true. And so if we were to say that any time an expert testifies based on facts, that that suggests that the facts are true regardless of whether the facts are omitted because of a hypothetical or the trier of fact knows or is instructed that they're not admitted for the truth of the matter asserted, I don't know what's left of expert testimony. But there's the problem of whether those facts are proved. So here, what evidence in the record shows that the substances in question were meth and marijuana? Sure, and if I may, I'd like to address the first part of that question just briefly, which is I do think, and some commentators have observed, that if this court were to adopt a rule like what Petitioner proposes, it doesn't necessarily just have criminal law implications because it really does change the landscape of Rule 703. And so it could have implications beyond that. To get to the last part of your question about what evidence was in the record, I want to be clear, but I take your honor to be asking about the evidence that this particular substance was tested, or are you asking about that this particular substance was what it was? So if the facts on which Longoni relied as an expert in reaching his conclusion were not offered for the truth of the matter asserted, then what evidence is there in the record that the substances were meth and marijuana? So there's Longoni's opinions, first of all, which obviously are offered for the truth of the matter asserted. And I do think there's, as there was in Williams, independent evidence from which the jury could draw the conclusion that this was the evidence that was tested. What is that? So that would be, there's a line drawn all the way literally from the crime scene to the courtroom. So if I start at the end there, the three substances, items 20, 26, and 28, were admitted as physical exhibits at trial, so they were present in the courtroom for the jury. What good does that do? The jury would taste it or whatever. Sample these drugs and see what they were? But I think in terms of them being able to draw the conclusion that these really were the substances that were tested, and thus Longoni had something relevant to rely on in terms of the testing. So starting at the crime scene, photographs of those exact same items were admitted at trial so the jury could see that these are the same things. There's a chain of custody evidence that was testified to by law enforcement about how it got from the crime scene to an evidence locker. The only reason it left an evidence locker, the only time, was to go to the lab. And then the physical exhibits actually bear initials and a date that's just a few days after the evidence got to the lab. So those exhibits were the ones that were taken from the scene. And let's say those are the exhibits that were sent to the lab. What evidence is there that they were tested at the lab and this data is the data that was produced? So in terms of evidence that these particular items were actually tested by RASC, I think in terms of substantive evidence, a lot of the details that are in the record obviously couldn't be considered as substantive evidence. But I do think Longoni, even if you set all that basis evidence aside, pretend it never was referenced at all. Longoni testified that he was asked to evaluate the materials from a particular case, a particular case number. That case number was otherwise in the record from law enforcement. And I think if you imagine no basis evidence at all, I think at the very least he could say, as he did here, that he reviewed the records from this particular case number, he independently reviewed the materials that were there, and these are his independent conclusions. Certainly if he had done so himself and replicated the tests, I'd follow everything you're saying. I get it. I also understand that if he'd said, well, as Mr. Fagan indicated, that I assume that traditional processes were followed and here's what those traditional processes are, it's still being come upon the state to prove up that that assumption is a valid assumption because, as it was done in common law, hypothetical is only as good as the hypothetical, right, the hypothetical opinion. And if the bases aren't proven up, then the expert's opinion can be stricken even at common law. And here I think Justice Alito is just pointing out, the only thing that this testimony could have been offered for does seem to be the truth that RASC did these tests and found these results. And I'm just struggling with how is it not the truth, counsel? Sure, and let me try to explain why. If you think about the hypothetical I just posed where none of that basis evidence was ever referenced at trial and assume Longoni was permitted to testify that he reviewed the case records. No, no, no, no, but see, that's the whole point. Let's put RASC aside. RASC doesn't exist. He just comes in and says, I think this is meth and marijuana. That would be stricken, right? I assume something happened and he'd never prove up the assumptions of what happened. That would be stricken. I think the link I'm talking about, which is to say he reviewed the records from a particular case number, I think would be required in order to make the evidence relevant. I'd point out that relevance is really not a constitutional requirement. No, of course not. We're not talking about relevance. We're talking about confrontation clause, right, to confront the witnesses against you, right? It doesn't say witnesses who put their testimony with wax seals. It says witnesses, all witnesses. And here, he completely and utterly is, I think even the federal government recognizes, it's quite unusual for him to come in, not with a suit, as Justice Kagan points out, and says, well, in this case, there's a lot of stuff in which he says RASC says this and RASC says that, the report says this, the report says that, and I'm taking it as true and that's important for my opinion. And that's why I think there's a critical difference, potentially, between him just being able to say that he reviewed these materials and not reveal anything about them, and him revealing so many details about the materials. That's what I understand the United States' concern to be. Obviously, we don't think they're right about that. We think they misread the record a little bit here, but set that disagreement aside. I still think under the United States' view that, you know, one of the options that really should be preserved, even if Petitioner were to succeed in this case, and this would require a significant narrowing, I think, of Petitioner's suggested rule, is that the independent opinion testimony should still be possible, even if the detailed basis evidence can't be revealed. Oh, again, I'm sorry. Justice Thomas? Justice Sotomayor? Justice Kagan? Back to you, Justice Gorsuch. I've almost forgotten where I was at. I certainly took the United States and understood them to say, all right, he can testify based on assumptions, hypotheticals, but all those have to be proven up later to the satisfaction of the jury that they're true in order for the opinion to be valid. And here, again, he didn't do that. He said, Rast did this, and therefore I have this opinion. He didn't say, well, if somebody did this, and then the state later comes back and proves Rast did this because they called Rast or something else. That didn't happen here. So I get that there are many ways to skin the evidentiary cat, but this case just seems to fall on the wrong line of it. And then when we get to the testimonial question, whether it was preserved or not preserved, it's a big question, and the Court has splintered on that in the past, and you're asking us to essentially adopt a very thoughtful view of one of my colleagues, and that's a heavy lift in a case where it hasn't been argued below, isn't it? Well, a couple things. One is, you know, we briefed both Justice Thomas' view and the primary purpose test in the briefs, and we think ultimately these are non-testimonial under either view. So we don't need to decide that question. In terms of what the test is, I mean, we do think Justice Thomas' view is persuasive, but we don't think you need to revisit the primary purpose test because we think even under the primary purpose test, for some of the reasons that I think Justice Barrett was getting at with some of her questioning, the notes here just are non-testimonial under that test as well. So we don't think you necessarily need to confront whether to get rid of the primary purpose test or anything like that. And as to the preservation question, I do think it's well established this Court has the discretion to affirm on alternative grounds, and this really is a subsidiary question to the question presented. I mean, ultimately the question presented here... Thank you, counsel. I appreciate it. Justice Kavanaugh? Finish that. Thank you, Justice Kavanaugh. My point was, you know, this Court's rule, 14.1, says that a question presented comprises every subsidiary question. Really at its core, the question presented here was, was there a confrontation clause violation? And deciding that question without the testimonial issue just doesn't make a lot of sense. Even Petitioner, as I understood them this morning, encourages the Court to reach that question, I think, unless it's going to come out against them and then maybe issue a narrow ruling. And I just think that this Court really should reach that question. I think there's adequate briefing in front of it. I would also point out, to the extent that the Court is concerned that the question presented assumes that statements are testimonial as it's framed by Petitioner, that was exactly true in Bullcoming. Nonetheless, it was a significant focus in this Court. And again, in Williams, Petitioner tried to reframe the question that way. Five justices found that this was non-testimonial. And you said you had briefed both the primary purpose test and the historical test that Justice Thomas has advocated. If you were to lose under the primary purpose test but prevail under the Justice Thomas test, then you would say we should consider which test is the better test, I assume. Yes, and I'll do one better and make it less blatantly outcome determinative. No, there's nothing wrong with being— I mean, as an advocate, that's fine, but go ahead. Well, my point is only that, you know, we think Justice Thomas is right regardless, but we just ultimately don't think the Court necessarily needs to revisit the primary purpose test. And we recognize that's a test the Court has applied. And so, you know, while we think Justice Thomas is right, we just don't think you need to reach that question here. Thank you. Justice Barrett? You didn't ask us to overrule Davis in the case of setting forth the primary purpose test. No, and again, I think the reason for that is that under our view, we went under either of the tests. These are just non-testimonial statements either way. And so we just don't think it's a question that this Court needs to confront in this case. It might want to confront it down the road. Justice Jackson? Yeah, I just am trying to understand the extent to which it matters that the testifying witness in this case actually revealed the source of the statements. There's been a lot of talk about how, and this is primarily from the SG, and I apologize because I didn't act in this, but, you know, what's really problematic here is that when he was on the stand, he was basically saying, well, the lab technician said X, Y, and Z. The report she wrote said X, Y, and Z. And I guess I'm not sure that it really matters in terms of whether or not we think it's problematic. So could you speak to that? Certainly. So I do think the core disagreement between us and the United States is, you know, they say in their brief that Longoni appears to have possibly served as a mouthpiece for rests, conclusions, testimony, et cetera. Obviously, we disagree with that assessment of the record. But we do think it matters to some extent. So assume the court is, you know, persuaded by the United States view or at least is heading in that direction and thinks too much of the basis evidence came out here or the way it came out is problematic in some ways. We do think it's still important to preserve the possibility to offer independent opinion testimony, even if the basis evidence itself can't be revealed. And this was what I was trying to get at with Justice Gorsuch. But is that really possible? And, again, yes, you were trying to get at that with Justice Gorsuch, and I guess I'm trying to understand. So you think there's a difference between an expert who says, my opinion is that this is drugs because the lab report said so, right? That's world one. He's testifying to that on the stand versus the expert who says, my opinion is that this is drugs, period. But it turns out that the only reason, the basis for him saying that, was because the lab report said so. Well, in a hypothetical scenario I'm envisioning, he would reveal what he's looking at. He would say, I was asked to pull the records from this case number. I pulled them. I looked at them, and here's my independent conclusion without telling you anything. He'd say it was independent, but that's the question. Is it really independent if he hasn't done the testing on his own? If he has no other basis for determining that this is drugs other than what the lab report said, does it matter that he revealed that or that he just says, this is my, quote, independent position? I think it matters a lot, especially as a practical perspective. So take this out of the drug context and put it in the DNA context for a second. Oftentimes the key witness in the DNA context, who is evaluating things at the end, wasn't necessarily involved in the testing or maybe performed one out of five key steps. And then ultimately they evaluate the materials and reach an independent opinion, which is what we think Longoni did here. And so if the court were to conclude that, in fact, in order for an expert to rely on underlying materials when they weren't involved in the testing, that's where we really get afraid of the multi-analyst scenario. What if the conclusion is not that he can't rely on it? Sure, he can be put up there, he can rely on it, but you have to make available the person who actually did the test. Because what I want to do is, as the defendant, challenge the veracity or reliability of the testing. And I think that's what the Confrontation Clause allows me to do. Well, the Confrontation Clause, of course, is a procedural and not a substantive right. And I think that type of reasoning starts to put it more in substantive territory, to say that he's allowed to do a certain thing, rather than to confront the evidence that's offered against him. And we perceive the key evidence being offered against him in the case of this one is a testimony. Thank you. Thank you, counsel. Rebuttal, counsel? Yes. Thank you, Mr. Chief Justice. My friend agreed that there was never an argument in the proceedings below that the evidence was testimonial. Maybe a citation here, a citation there. No argument in the proceedings below. So the case comes here to this court. It comes here on the assumption that the statements were testimonial, and the court can treat it as such in deciding this case. But to the extent that the court does reach the testimonial question, we recognize that there is going to be a difficulty. There are going to be marginal cases where circumstances are different, and it's going to be difficult to apply either the primary purpose test, the targeted individual test, or Justice Thomas' solemnity test. But I'd like to emphasize here that this is not a marginal case. This is a case where, under any of those tests, the statements here are testimonial. I'd urge the court to take a look at PATAP 127A. That is the prosecution, the state telling Rast that this trial has been set in Smith's case, that these are the charges against him, and that she needs to create forensic analysis evidence to support the prosecution's case against Mr. Smith. And it also bears emphasis, if you look at the notes in this case, they start on page 88 of Petitioner's Appendix. And if you look at the notes, they are written. These are not scrap pieces of paper. They're written on letterhead of the Arizona Department of Public Services with their seal. They're typewritten, and they were created on the exact same day that the report was created. It's essentially an appendix to that report. And so these are not some scraps of paper that were scrounged up and provided in this case. They are formalized documents that reflect the solemnity of Rast's statements in those documents. And so all of those factors, we emphasize, were not present in Williams with respect to the report in that case. Now, to the extent that, and I do want to go back to the hypothetical that I was discussing with Justice Barrett. And we're not suggesting that notes, any and all notes that are created, are going to be testimonial. It is, of course, going to be circumstance dependent. But what is equally true is that a set of notes cannot be said to be non-testimonial simply because they use shorthand to set forth factual statements. So going back to the example of the police officer, if the police officer is taking statements from a witness, and this is a hypothetical that comes right out of Davis, if the police officer is taking statements from a witness and happens to do so in shorthand, that does not give the prosecution right to put on that police officer to introduce those statements from a witness. Nor does it provide a license to the prosecution to put on a different police officer and read statements from those notes, interpreting those shorthand. But at the end of the day, you're conveying a set of testimonial statements, out-of-court statements, that have not been confronted. Now, I want to address a few other points. The United States made the point that there may be circumstantial evidence. And, in fact, in Williams, the plurality recognized that there was ample circumstantial evidence in there that the prosecution might have relied on in addition to those testimonial statements, and that's likely to be true in a lot of cases. But, you know, that is not what was done here. In this case, they didn't rely on circumstantial evidence. They could have said Lungoni looked at certain data and reached certain conclusions based on that data in the abstract, but they went further. They went further by having Lungoni recite and recount from Rath's statements the specific items she tested, the particular procedures she used, and the results she reached. And the reason, of course, if the state rested on circumstantial evidence, their case would be not as strong, certainly not as strong. But the strength of their case, as has been noted, is not a confrontation issue, and it doesn't raise a confrontation violation. The reason that the state recognized that it needed to introduce Rath's statements into the record through Lungoni is that it strengthened their case. And that, in a nutshell, underscores why her statements were being offered for the truth of the matter asserted. One other point I'd like to address, which is this notion of a limiting instruction. My friend at the state indicated that several times that Smith did not request a limiting instruction. It bears emphasis that you get to the notion of a limiting instruction only after you have a legitimate non-hearsay purpose for admitting the statements in the first place. If, in the first instance, they are offered for the truth, such as when the statement would support the expert's opinion only insofar as it is true, then it makes no sense from a logical standpoint to tell the jury, do not consider it. Thank you. Thank you, counsel. The case is submitted.